**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| CHRISTINE GRALOW, | ) | NO. CV 23-7238-SSS(E) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION OF |
| | ) | |
| CITY OF PALOS VERDES ESTATES, et al., | ) | UNITED STATES MAGISTRATE JUDGE |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This Report and Recommendation is submitted to the Honorable Sunshine Suzanne Sykes, United States District Judge, pursuant to 28 U.S.C. section 636 and General Order 05-07 of the United States District Court for the Central District of California.

**PROCEEDINGS**

On August 24, 2023, Plaintiff, proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. section 1983. On September 15, 2023, Plaintiff paid the filing fee. On February 27, 2024, Plaintiff filed a First Amended Complaint. The First Amended

Complaint names as Defendants the City of Palos Verdes Estates, Officer Jonathan Ix, Detective Sean Crisfield, Debra Baumgartner, Ellyza Baidiango, Justin-Villa Care and Ziba Hospice.

On March 5, 2024, Defendant Debra Baumgartner filed a "Special Motion to Strike First Amended Complaint" ("Motion to Strike") pursuant to California Code of Civil Procedure section 425.16, accompanied by Baumgartner's declaration and exhibits. On April 12, 2024, Plaintiff filed a "Response to Defendant Baumgartner's Special Motion to Strike," which the Court construes as Plaintiff's Opposition. On April 28, 2024, Plaintiff filed a declaration and exhibits in support of her Opposition. On May 6, 2024, Defendant Baumgartner filed a Reply.

On April 15, 2024, Plaintiff filed a "Motion for Leave to File Second Amended Complaint" ("Motion to Amend"), attaching a proposed Second Amended Complaint. On May 6, 2024, Defendant Baumgartner filed an Opposition to the Motion to Amend. Defendants City of Palos Verdes Estates, Officer Jonathan Ix and Detective Sean Crisfield (collectively the "City Defendants"), Defendant Ellyza Baidiango and Defendant Justin-Villa Care indicated they do not oppose the Motion to Amend.[1]

///
///
///
///

---

[1] Defendant Ziba Hospice has not appeared in this action.

2

**SUMMARY OF PLAINTIFF'S ALLEGATIONS**

In the First Amended Complaint, Plaintiff alleges:

On August 26, 2022, Mary Baumgartner ("Mary") and her home health aide Ellyza Baidiango ("Baidiango") were at Mary's home in the City of Palos Verdes Estates (First Amended Complaint, p. 5). Baidiango worked for Justin-Villa Care (id., pp. 5-6). Plaintiff Christine Gralow ("Plaintiff") had been invited to visit Mary's home (id., p. 6).

Plaintiff asked Baidiango to contact Mary's daughter, Debra Baumgartner ("Baumgartner"), because Mary "appeared to be in discomfort" (id., p. 6). Baidiango called and sent text messages to Baumgartner (id.). "It is unclear what exactly [Baidiango] communicated to [Baumgartner]" (id.).

Baumgartner arrived at Mary's house "extremely inebriated, irate and belligerent" (id.). Baumgartner "barged into the home and quickly attempted to physically attack the Plaintiff" (id.). Baumgartner's friend had to restrain Baumgartner (id., pp. 6-7). "It was [Baumgartner] who attempted to attack the Plaintiff physically. The Plaintiff never attacked [Baumgartner]" (id., p. 7).

Baumgartner called the police (id.). Officer Ix responded to the call (id., p. 8). Baidiango "wrongfully

|   |   |
|---|---|
| 1 | alleged" that Plaintiff "attempted to remove the oxygen |
| 2 | tubes" from Mary (id., p. 6).  Officer Ix "encouraged the |
| 3 | making of false statements" (id., p. 9).  Baumgartner and |
| 4 | Baidiango made "false statements" to Officer Ix, upon which |
| 5 | Officer Ix and Detective Crisfield relied (id., p. 9). |
| 6 | Officer Ix "made no effort to even take a statement from the |
| 7 | Plaintiff and he never conducted a proper investigation" |
| 8 | (id., p. 8).  In a police report, Officer Ix indicated his |
| 9 | belief that Plaintiff came to Mary's residence with the |
| 10 | intent to take Mary's life (id., p. 8).  "Anyone who may |
| 11 | have claimed that the Plaintiff attempted to remove oxygen |
| 12 | tubes must have lied, as that never happened" (id., p. 8). |
| 13 | The police report listed aggravated assault and elder abuse |
| 14 | as the offenses assertedly committed by Plaintiff (id., p. |
| 15 | 9). |
| 16 | |
| 17 | Plaintiff was arrested for attempted murder and held in |
| 18 | jail for five days (id., pp. 8-9).  "Plaintiff was |
| 19 | subsequently released after the Torrance District Attorney's |
| 20 | office dropped all charges against her" (id., p. 9). |
| 21 | |
| 22 | Plaintiff seeks compensatory and punitive damages (id., |
| 23 | p. 18). |
| 24 | /// |
| 25 | /// |
| 26 | /// |
| 27 | /// |
| 28 | /// |

**PLAINTIFF'S CLAIMS**

In the First Amended Complaint, Plaintiff asserts six claims:

1.  False arrest and false imprisonment, apparently in alleged violation of the Fourth Amendment, against the City Defendants (First Amended Complaint, pp. 10-11).

2.  Malicious prosecution, in alleged violation of California Civil Code section 1038, against the City Defendants (id., pp. 11-12).

3.  Defamation, in alleged violation of California Civil Code sections 44 through 47, against Defendants Baumgartner, Baidiango, Ziba Hospice and Justin-Villa Care (id., pp. 12-13).

4.  Filing a false police report, in alleged violation of California Penal Code section 148.5, against Defendants Baumgartner, Baidiango, Ziba Hospice and Justin-Villa Care (id., pp. 13-15).

5.  False arrest and false imprisonment, in alleged violation of the Bane Act (California Civil Code section 52.1), against the City Defendants (id., pp. 15-17).

6.  Intentional infliction of emotional distress, in alleged violation of California Civil Code section 1708.7, against Defendants Baumgartner, Baidiango and Justin-Villa Care (id., pp. 17-18).

///
///

The proposed Second Amended Complaint contains the same six claims, and also: (1) inserts a seventh claim for invasion of privacy, in alleged violation of California Penal Code section 637.2(b), against Defendants Baidiango and Justin-Villa Care (Second Amended Complaint, pp. 37-38); (2) drops Ziba Hospice as a Defendant (id., p. 3); (3) drops Defendants Baidiango and Justin-Villa Care from the claims for alleged defamation and filing a false police report (id., pp. 31, 33); (4) adds Defendant Ix to the claims for alleged intentional infliction of emotional distress and filing a false police report (id., pp. 33, 35); and (5) includes numerous additional factual assertions regarding the alleged events (see id., pp. 6-26).

**DISCUSSION**

**I.   Defendant Baumgartner's Motion to Strike**

   **A.   Applicable Law**

"California law provides for the pre-trial dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPs, that masquerade as ordinary lawsuits but are intended to deter ordinary people from exercising their political or legal rights or to punish them for doing so." Makaeff v. Trump Univ., LLC, 715 F.3d 254, 261 (9th Cir. 2013) (internal quotation marks and citation omitted). "California's anti-SLAPP statute allows a defendant to file a 'special motion to strike' . . . and involves a two-step inquiry." Herring Networks, Inc. v. Maddow, 8 F.4th 1148, 1155 (9th Cir. 2021) (quoting Cal. Civ. Proc. Code § 425.16(b)(1)). First, the moving defendant

6

must make a threshold showing that the challenged claims arise from protected activity. See Makaeff v. Trump Univ., LLC, 715 F.3d at 261-62. If the defendant meets this threshold, "[t]he burden then shifts to the plaintiff . . . to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal." Id.

When exercising supplemental jurisdiction over state law claims, federal courts apply federal procedural law and state substantive law. See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996) ("Under the Erie[2] doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."); Hanna v. Plumer, 380 U.S. 460, 465 (1965) (under the "broad command of Erie . . . federal courts are to apply state substantive law and federal procedural law" to state law claims); see also Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress, 890 F.3d 828, 834 (9th Cir.), amended, 897 F.3d 1224 (9th Cir. 2018), cert. denied, 139 S. Ct. 1446 (2019) ("Planned Parenthood") ("In this context [of an anti-SLAPP motion], if there is a contest between a state procedural rule and the federal rules, the federal rules of procedure will prevail.").

"The degree to which the anti-SLAPP provisions are consistent with the Federal Rules of Civil Procedure" – and thus whether and how federal courts should review anti-SLAPP motions – "has been hotly disputed." Planned Parenthood, 890 F.3d at 833. In order to avoid "the collision of California state procedural rules with federal

---

[2] Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).

procedural rules," federal courts review anti-SLAPP motions "under different standards depending on the motion's basis." Id.  If the motion challenges a claim's legal sufficiency, "a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." Id. at 834.  In such circumstance, the plaintiff need not submit evidence, and discovery is unnecessary.  Id.  By contrast, if the motion challenges a claim's factual sufficiency, "then the Federal Rule of Civil Procedure 56 standard will apply.  But in such a case, discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court."  Id.

Baumgartner does not state explicitly whether the Motion to Strike challenges the claims' legal sufficiency under Rule 12 or the claims' factual sufficiency under Rule 56.  Indeed, Baumgartner does not acknowledge the federal authorities cited above or suggest how the procedures applicable to anti-SLAPP motions in federal court should relate to Baumgartner's arguments.  However, it appears to the Court that Baumgartner attacks both the legal sufficiency and the factual sufficiency of Plaintiff's claims (see Motion to Strike, pp. 10, 13-16).

**B.   Conduct Arising From Protected Activity**

Plaintiff bases her claims against Baumgartner on Baumgartner's statements to Officer Ix and Detective Crisfield in connection with the incident at Mary's house on August 26, 2022 (see First Amended Complaint, pp. 9, 12-13, 17).  Statements to law enforcement officers

8

qualify as protected activity under the anti-SLAPP statute as "any written or oral statement or writing . . . made in connection with . . . [an] official proceeding authorized by law." See Cal. Civ. Proc. Code § 425.16(e)(2); Comstock v. Aber, 212 Cal. App. 4th 931, 941, 151 Cal. Rptr. 589, 598 (2012) ("The law is that communications to the police are within SLAPP."); Salma v. Capon, 161 Cal. App. 4th 1275, 1286, 74 Cal. Rptr. 3d 873, 882 (2008) (reports to police seeking "official investigations into perceived wrongdoing, which might culminate in criminal prosecution or other official proceedings," constitute protected activity under section 425.16); Walker v. Kiousis, 93 Cal. App. 4th 1432, 1439, 114 Cal. Rptr. 2d 69, 75 (2001) (citizen complaint to law enforcement agency constitutes a statement "made in connection with an official proceeding authorized by law" under section 425.16(e)(2)).  Thus, Baumgartner has made a threshold showing that the challenged claims arose from protected activity.

### C. Reasonable Probability of Success

At step two, the burden shifts to Plaintiff to demonstrate a reasonable probability of success on her claims.  Baumgartner argues that Plaintiff's claims suffer from both legal and factual deficiencies that prevent Plaintiff from meeting this burden.

#### 1. Claim for Filing a False Police Report

Baumgartner argues that Plaintiff's claim for filing a false police report fails as a matter of law because California Penal Code

section 148.5 does not provide for a private right of action.  "[A] statute creates a private right of action only if the statutory language or legislative history affirmatively indicates such an intent. . . .  That intent need not necessarily be expressed explicitly, but if not it must be strongly implied."  Farmers Ins. Exch. v. Superior Court, 137 Cal. App. 4th 842, 850, 40 Cal. Rptr. 3d 653, 658 (2006) (citations omitted).  If the court determines that "the Legislature expressed no intent on the matter either way, directly or impliedly, there is no private right of action . . . , with the possible exception that compelling reasons of public policy might require judicial recognition of such a right."  Animal Legal Defense Fund v. Mendes, 160 Cal. App. 4th 136, 142, 72 Cal. Rptr. 3d 553, 556 (2008) (citations omitted).

   Nothing in the statutory language or legislative history indicates that the state legislature intended to create a private right of action under California Penal Code section 148.5.  Plaintiff fails to cite any authority suggesting the existence of such a private right of action.  Courts considering the issue, including this Court, have concluded there exists no such private right of action.  See Biro v. Keyes, 2022 WL 2102898, at *19 (C.D. Cal. Feb. 23, 2022), adopted, 2022 WL 3102836 (C.D. Cal. May 23, 2022) (finding no statutory basis for inferring private right of action under California Penal Code section 148.5 or other criminal statutes); Henneberry v. City of Newark, 2014 WL 4978576 at *17 (N.D. Cal. Oct. 6, 2014) ("The Court has reviewed Penal Code sections 118, and 148.5 and finds no indication that civil enforcement of any kind is available to Plaintiff."); Rezek v. Tustin, 2012 WL 5829928, at *8 (C.D. Cal.

Nov. 15, 2012) ("The Court has reviewed Sections 148.5, 134, 132, 127, and 137, and has found that the statutes do not include language suggesting that civil enforcement is available to Plaintiff."); see also Ellis v. City of San Diego, 176 F.3d 1183, 1189 (9th Cir. 1999) (affirming dismissal of claims alleging violations of sixteen sections of the California Penal Code "[b]ecause these code sections do not create enforceable individual rights"). As a matter of law, Plaintiff has failed to demonstrate a reasonable probability of success on her claim for filing a false police report in violation of California Penal Code section 148.5.

### 2. Claims for Defamation and Intentional Infliction of Emotional Distress

Baumgartner argues that Plaintiff's claims for defamation and intentional infliction of emotional distress ("IIED") fail as a matter of law because the claims are based on conduct assertedly protected by the litigation privilege set forth in California Civil Code section 47(b) (see Motion to Strike, pp. 12-14). The litigation privilege is an affirmative defense, and Baumgartner bears the burden of showing the defense applies to the conduct at issue. See Laker v. Bd. of Trustees of Cal. State Univ., 32 Cal. App. 5th 745, 769, 244 Cal. Rptr. 3d 238, 259 (2019) (defendant bears burden of proof when asserting affirmative defense in the context of anti-SLAPP motion).

California Civil Code section 47(b) "establishes a privilege that bars liability in tort for the making of certain statements." Hagberg v. Cal. Fed. Bank, 32 Cal. 4th 350, 360, 7 Cal. Rptr. 3d 803, 808

(2004), superseded by statute on other grounds as stated in Gonzales v. City of Los Angeles, 2021 WL 4442409, at *6 (C.D. Cal. Mar. 10, 2021), adopted, 2021 WL 4434341 (C.D. Cal. May 27, 2021). A "privileged publication" includes "one made . . . in any [ ] official proceeding authorized by law . . . ," with certain exceptions. Cal. Civ. Proc. Code § 47(b). "[R]eports to law enforcement officials . . . fall within the heart of conduct protected by the litigation privilege." Intermarketing Media, LLC v. Barlow, 2021 WL 5990190, at *6 (C.D. Cal. May 4, 2021); see also Hagberg v. Cal. Fed. Bank, 32 Cal. 4th at 360 (statements to law enforcement personnel reporting suspected criminal activity were covered by the litigation privilege).

However, section 47(b) was revised, effective January 1, 2021, to add the following exception:

> (5) This subdivision does not make privileged any communication between a person and a law enforcement agency in which the person makes a false report that another person has committed, or is in the act of committing, a criminal act or is engaged in an activity requiring law enforcement intervention, knowing that the report is false, or with reckless disregard for the truth or falsity of the report.

Cal. Civ. Code § 47(b)(5). "Given this amendment, under current California law there is only a qualified privilege for reports of a crime – reports that are intentionally false or made with reckless disregard of their truth are not privileged." Moore v. Rodriguez, 2021 WL 2222590, at *11 (S.D. Cal. June 2, 2021) (internal quotations

and citation omitted); see also King v. City of Sacramento, 2022 WL 37048, at *3 (E.D. Cal. Jan. 4, 2022) ("Prior to 2021, the California Supreme Court held the privilege was absolute, so it applied 'without respect to the good faith or malice of the person who made the statement' . . . [but] the California Legislature amended the law, effective January 1, 2021, to make the privilege a qualified one."); accord Tuomela v. Waldorf-Astoria Grand Wailea Hotel, 2021 WL 233695, at *2 n.5 (D. Haw. Jan. 22, 2021) (dicta).

Baumgartner argues that her statements to the police were absolutely privileged and that, therefore, Plaintiff's defamation and IIED claims fail as a matter of law (Motion to Strike, pp. 12-13). This argument must be rejected; section 47(b)(5) now provides only a qualified privilege. See id. Baumgartner erroneously relies on authorities predating the 2021 amendment of section 47(b) (see Motion to Strike, pp. 12-13; Reply, pp. 5-6). Contrary to Baumgartner's arguments, section 47(b)(5) would not bar Plaintiff's defamation and IIED claims if, as Plaintiff asserts, Baumgartner's statements were intentionally false or made with reckless disregard for the truth. See Moore v. Rodriguez, 2021 WL 2222590, at *11.

Baumgartner also has submitted a declaration attempting to refute factually Plaintiff's assertions that Baumgartner's statements to police and others were false (see "Declaration of Debra Baumgartner, etc.," ¶¶ 8-11). This factual challenge to Plaintiff's defamation and IIED claims triggers a right to discovery. See Planned Parenthood, 890 F.3d at 833. The Court cannot uphold a factual challenge at this time because "[r]equiring a presentation of evidence without

accompanying discovery would improperly transform the motion to strike under the anti-SLAPP law into a motion for summary judgment without providing any of the procedural safeguards that have been firmly established by the Federal Rules of Civil Procedure." Id. at 833-34. Accordingly, this aspect of the Motion to Strike should be denied without prejudice to the refiling of the Motion (or a motion for summary judgment) after the parties have engaged in discovery.

**II.   Plaintiff's Motion to Amend**

After a plaintiff once has amended a complaint, the plaintiff may amend again only by leave of court or by written consent of the defendant(s). See Fed. R. Civ. P. 15(a). Leave shall be "freely" given "when justice so requires." Id. Courts should apply Rule 15(a) with "extreme liberality." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (per curiam); AmerisourceBergen Corp. v. Dialysis West, Inc., 465 F.3d 946, 951 (9th Cir. 2006) ("Rule 15(a) is very liberal"). "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir. 2004); see Desertrain v. City of Los Angeles, 754 F.3d 1147, 1154 (9th Cir. 2014) (same). These factors do not carry equal weight, and "it is the consideration of prejudice to the opposing party that carries the greatest weight." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d at 1052.
///
///

Absent a showing of prejudice or a strong showing of any of the remaining factors, there is a presumption that leave to amend should be granted. Id. The party opposing amendment bears the burden of showing that leave should be denied, Desert Protective Council v. United States Dep't of the Interior, 927 F. Supp. 2d 949, 962 (S.D. Cal. 2013), aff'd, 630 Fed. App'x 705 (2015) (citing Genentech, Inc. v. Abbott Labs., 127 F.R.D. 529, 530 31 (N.D. Cal. 1989)), including the burden of establishing prejudice, DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187 (9th Cir. 1987).

As explained more fully above, and as Baumgartner argues, Plaintiff's claim for filing a false police report fails as a matter of law because there exists no private right of action. Thus, leave to amend this claim should be denied as futile.

However, Baumgartner's other arguments are insufficient to warrant denial of leave to amend. In particular, Baumgartner has not shown that the claims for defamation or IIED (the only other claims alleged against Baumgartner) fail as a matter of law. Therefore, Baumgartner has not shown that amendment as to these claims would be futile. Baumgartner also has not shown that Plaintiff unduly delayed bringing the Motion to Amend or that permitting amendment would prejudice Baumgartner.

Because the proposed Second Amended Complaint contains the legally insufficient claim for filing a false police report, the Motion to Amend should be denied. However, Plaintiff should be granted leave to file a Third Amended Complaint that does not include

any claim for filing a false police report.

**RECOMMENDATION**

For all of the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) accepting and adopting this Report and Recommendation; (2) granting Defendant Baumgartner's Motion to Strike only as to Plaintiff's claim for filing a false police report and striking that claim with prejudice and without leave to amend; (3) denying the Motion to Strike in all other respects without prejudice; (4) denying Plaintiff's Motion to Amend; and (5) granting Plaintiff leave to file a Third Amended Complaint that is consistent with this Report and Recommendation.

DATED: May 22, 2024.

/s/
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| CHRISTINE GRALOW, | ) | NO. CV 23-7238-SSS(E) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER ACCEPTING FINDINGS, |
| | ) | |
| CITY OF PALOS VERDES ESTATES, ET AL., | ) | CONCLUSIONS AND RECOMMENDATIONS |
| | ) | |
| | ) | OF UNITED STATES MAGISTRATE JUDGE |
| Defendants. | ) | |

Pursuant to 28 U.S.C. section 636, the Court has reviewed the First Amended Complaint, all of the records herein and the attached Report and Recommendation of United States Magistrate Judge. Further, the Court has engaged in a de novo review of those portions of the Report and Recommendation to which any objections have been made. The Court accepts and adopts the Magistrate Judge's Report and Recommendation.

IT IS ORDERED that: (1) Defendant Baumgartner's Motion to Strike is granted only as to Plaintiff's claim for filing a false police report and that claim is stricken with prejudice and without leave to

amend; (2) the Motion to Strike is denied in all other respects without prejudice; (3) Plaintiff's Motion to Amend is denied; and (4) Plaintiff is granted leave to file a Third Amended Complaint consistent with the Report and Recommendation and this Order.

Plaintiff is granted thirty (30) days from the date of this Order within which to file a Third Amended Complaint. Any Third Amended Complaint shall be complete in itself and shall not refer in any manner to the prior Complaints. Any exhibits referenced in the Third Amended Complaint must be attached thereto. Any Third Amended Complaint may not include a claim for filing a false police report. Plaintiff may not add defendants without leave of Court. See Fed. R. Civ. P. 21. Failure timely to file a Third Amended Complaint that complies with this Order may result in the dismissal of the action. See Pagtalunan v. Galaza, 291 F.3d 639, 642-43 (9th Cir. 2002), cert. denied, 538 U.S. 909 (2003) (court may dismiss action for failure to follow court order).

IT IS FURTHER ORDERED that the Clerk serve forthwith a copy of this Order and the Magistrate Judge's Report and Recommendation on Plaintiff and on all counsel of record.

DATED: _____, 2024.

_____
SUNSHINE SUZANNE SYKES
UNITED STATES DISTRICT JUDGE

2